**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Kisu Seo**, on behalf of himself and all other plaintiffs similarly situated known and unknown, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 19-cv-3248 |
| v. | ) ) | |
| **H Mart Inc., H Mart Holdings, Inc., H Mart Logistics, Inc., H Mart American Dream, LLC, H Mart Companies, Inc., H Mart Midwest Corp. DBA Super H Mart, BK Schaumburg Inc., H Mart Troy, LLC, H Mart Torrence LLC, H Mart Garden Grove, LLC, H Mart Norwalk LLC and Il Yeon Kwon** | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, Kisu Seo ("Seo"), on behalf of himself and all other Plaintiffs similarly situated known and unknown, by and through his undersigned attorneys, hereby files this Amended Complaint against Defendants, H Mart Inc. ("HQ"), H Mart American Dream, LLC, H Mart Holdings, Inc., H Mart Logistics, Inc., H Mart Companies, Inc., H Mart Midwest Corp. DBA Super H Mart, BK Schaumburg Inc DBA H Mart Fresh, H Mart Troy, LLC, H Mart Torrence LLC, H Mart Garden Grove, LLC, H Mart Norwalk, LLC (collectively, the "Subsidiaries" and together with HQ, the "defendants") and Il Yeon Kwon (collectively the "Defendant"), and states as follows:

### INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 et seq., and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et. seq.* ("IMWL"), that he is entitled

to recover from Defendants: (1) unpaid overtime, (2) compensation for unpaid off-the-clock work, (3) liquidated damages, (4) pre-judgment and post-judgment interest, (5) punitive damages and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367. More specifically, all subsidiary defendants which are not incorporated in Illinois are still subject to this Court's jurisdiction because combined with HQ, the defendants are integrated enterprise that acted as a single-employer. Alternatively, HQ and the subsidiaries are not truly separate entities and the subsidiaries acted as agents of HQ and therefore the subsidiaries' contact with Illinois is imputed to HQ.

3.      Venus is proper in the Northern District pursuant to 28 U.S.C. §1367.

## THE PARTIES

4.      Defendant HQ operates a chain of Asian grocery stores and logistics company as a single integrated enterprise under the shared trade name "Super H Mart" or "H Mart." It currently operates 67 stores and multiple logistics warehouses throughout the U.S.

5.      In May 2015, plaintiff was living and working in Illinois when HQ wanted to interview him for a position. HQ interviewed plaintiff in Illinois for a produce buyer position. After the interview, HQ hired plaintiff and also agreed to sponsor plaintiff to become a permanent resident of the U.S. Plaintiff formally began his employment with HQ on June 4, 2015. HQ directed plaintiff to move to New Jersey to get trained at its store in Ridgefield, New Jersey. Plaintiff flew to New Jersey and began his traning at the Ridgefield store of H Mart. Plaintiff worked at the Ridgefield store until October 24, 2015.

2

6.      After successful training, HQ assigned plaintiff to work at Garden Grove, California location of H Mart store. Plaintiff started his work at Garden Grove H Mart store on October 25, 2015. A few months after plaintiff began working at the Garden Grove store, HQ reassigned him to work at its logistics warehouse in Whitter, CA. Several months after working at the warehouse, HQ yet again reassigned plaintiff to work at Norwalk, CA location of H Mart. While he was working at Norwalk store, HQ opened a new store in Torrence, CA. After the Torrence store opening, HQ ordered Seo to work at the new store. After working at various locations of H Mart in California, HQ transferred plaintiff to Troy, Michigan location of H Mart. Seo worked in Troy, MI from September 26, 2016 to July 19, 2018.

7.      In July of 2018, HQ transferred Seo to work at Naperville, IL location of H Mart. Seo worked at that store from July 22, 2018 to October 7, 2018. Seo was transferred one last time on October 8, 2018, this time to Schaumberg location of H Mart. Seo worked at that location until he was terminated on April 17, 2019.

8.      Througout Seo's employment with HQ, HQ and its subsidiaries had complete control over plaintiff's employment. HQ hired Seo. HQ also determined when Seo to work, where to work, how much money to pay him, how many hours to work, what kind of work to do, to whom he reports to, and whether he should be disciplined. HQ ultimately decided to terminate Seo as well.

9.      HQ maintained all of Seo's employment records as well as employment records for all other employees of HQ in its office located at 300 Chubb Ave., Lyndhurst, NJ 07071.

10.     HQ oversees(ed) employee relations for all subsidiaries including plaintiff. The following tasks are done exclusively by HQ for all subsidiaries:

   a.  Organizes and updates employee files.

   b.  Track employee progress, noting promotions, recognition and policy violations and documenting them accordingly

c. Ensure that former employee files are maintained according to law.

d. Advertise positions, identify and communicate with potential candidates.

e. Conduct interviews, perform employment verification and background checks and assist with notifying candidates with their decision.

f. Works with other human resources staff members to complete the hiring process including completing and filing all hiring paperwork.

g. Educating employees in regards to compensation, benefits and company policies and designing and implementing the orientation and training process.

h. Act as a liaison between employer and employee, overseeing employee relations.

i. Receiving and handling employee complaints, escalating these complaints to the level of disciplinary or legal action when necessary

j. Updates employees with any changes in company policy, advising supervisors on treatment of staff and company policies, responds to employee violations of policy and generally helps to resolve conflict in the workplace.

k. Facilitate the layoff, firing or departure process of employees who leave voluntarily.

l. Conduct exit interviews and administer severance, and assist with firing decisions and notification of termination.

m. Handle questions, interpreting and administering contracts and helping resolve work-related problems.

n. Perform HR duties such as dealing with under staffing, refereeing disputes, firing employees and administering disciplinary procedures

o. Research, design and implement learning and development programs

p. Document all investigative activities.

q.  Develop and design the company's health and safety policies.

r.  Visit each store and identify hazardous workplace conditions and conduct internal inspection.

s.  Train employees on safety policies and procedures, and regulations pertaining to employee safety.

t.  Partner with various vendors to provide health and safety related services and manage the contract.

u.  Ensure compliance with all applicable federal and state health and safety regulations and ensures necessary records are maintained and prepared according to established guidelines.

v.  Assist in Occupational Safety and Health Administration (OSHA) inspections, providing inspectors with appropriate documents and identifying safety measures.

w.  Review and follow-up on inspection reports from government agencies such as Health Dept., Consumer Affairs, USDA, FDA, etc.

x.  Completing applications for renewal of various licenses and permits.

y.  Managing the facilities which are related to health and compliance issues.

z.  Performs tasks to establish and maintain employee/payroll records. Maintains payroll system and processes payroll, including new hire set up, tax form processing, local taxes, time sheets review, direct deposit set up, benefits set up, relocation, voluntary deductions, terminations and garnishment processing.

aa. maintainig employee changes are entered correctly and made on a timely basis. Reviews changes for proper authorization and adherence to policy including compliance with federal/state/local regulations. Process time sheets and audits timekeeping records for compliance with established standards. Balances and

controls earnings and deduction totals, inspecting automated system output such as registers and standard reports. Identifies and corrects out-of-balance conditions.

bb. Interprets payroll policies and procedures to company employees of all levels.

cc. Researches and analyzes payroll/tax discrepancies and processes appropriate corrections.

dd. Analyzes, audits, reconciles and resolves complex payroll, tax, and employee issues.

ee. Ensures payroll reporting and payments are compliant with company policy, generally accepted accounting principles, and federal, state and IRS regulations.

ff. Researches and interprets federal and state regulatory requirements and resolves tax, withholding, garnishment, and wage/hour issues for payroll processing. Performs quarterly and annual balancing of wage and tax reports. Finds and corrects errors in a timely manner to ensure accuracy of payroll tax withholding, minimizing potential penalties.

gg. Responsible for accurate set up and system maintenance of SUI rates, registration of new accounts when required and verification of SUI rates by work location. Calculates and sets up garnishments, levies, and family court orders in.

hh. Coordinates efforts between payroll, human resources, finance, benefits, tax and other departments to ensure proper flow and maintenance of employee data. Coordinates with Finance to ensure the accuracy of payroll codes and general ledger account mapping in relationship to the payroll interface uploaded each pay period

ii. Provides data for auditors and local, state or federal agencies as needed

jj. Maintains payroll files and provide necessary reports or documentation. Creates and maintains SOPs as needed; monitors procedures for accuracy and relevance

kk. Design and implement overall recruiting strategy and execute on this strategy

ll. Perform job and task analysis to document job requirements and objectives

mm. Lead recruitment process for active open positions

nn. Develop and update job descriptions and job specifications

oo. Post, update and ensure consistency of all internal and external job postings.

pp. Prepare recruitment materials and source and recruit candidates by using company websites, databases, social media posts, appropriate job board, online recruitment resources, newspapers, etc.

qq. Onboard new employees in order to become fully integrated

rr. Provide analytical and well documented recruiting reports to the rest of the team

ss. Build applicant sources by researching and contacting with community services, colleges, employment agencies, and internet sites; providing organization information, opportunities, and benefits; making presentations; maintaining rapport.

tt. Provide complete, accurate, and inspiring information to candidates about the company and position.

uu. Stay abreast of current legislation and policy changes to ensure recruiting activities follow all processes and procedures outlined by Federal, State, and Local employment law.

vv. Facilitate post-offer process with employees once offer has been accepted.

ww. Conduct on-boarding and orientation with new hires.

xx. Design and implement overall recruiting strategy and execute on this strategy

yy. Review resumes and credentials for appropriateness of skills, experience, and knowledge in relation to position requirements.

zz. Screen candidates resumes and job applications

aaa.      Conduct interviews to filter candidates within schedule

bbb.      Conduct high volume full-cycle recruitment activities to ensure successful Talent Acquisition from a technical and cultural perspective

ccc.      Build applicant sources by researching and contacting with community services, colleges, employment agencies, and internet sites; providing organization information, opportunities, and benefits; making presentations; maintaining rapport.

ddd.      Provide complete, accurate, and inspiring information to candidates about the company and position.

eee.      Post, update and ensure consistency of all internal and external job postings.

fff. Prepare recruitment materials and source and recruit candidates by using company websites, databases, social media posts, appropriate job board, online recruitment resources, newspapers, etc.

ggg.      Review resumes and credentials for appropriateness of skills, experience, and knowledge in relation to position requirements.

hhh.      Screen candidates resumes and job applications

iii. Conduct interviews to filter candidates within schedule

jjj. Onboard new employees in order to become fully integrated

kkk.      Provide analytical and well documented recruiting reports to the rest of the team

lll. Conduct high volume full-cycle recruitment activities to ensure successful Talent Acquisition from a technical and cultural perspective

11.    HQ formulates every aspects of employment and labor rules, guidelines, and policies for all itself and its subsidiaries. The branch stores do not have a say in formulation of any rules or policies as they are simply mandated to be implemented by HQ.

12.    All employment positions are filled by HQ through its website www.hmart.com. Individual branches do not have any right to chart their own course nor do they have staff to do so.

13.    Hiring, promotion, demotion, termination of the H Marts' employees are done by HQ. Each branch managers are hired by HQ and through those branch managers, HQ exercises complete control over all of operation of its subsidiaries. None of the H Mart's separate corporate entities have HR department because HQ's HR department handles all of human Resource for all its subsidiaries. Local branch store managers report to HQ and the managers do not have authority to discipline or terminate employees. If there is a problem with an employee, HR department employee(s) from HQ investigate the situation, adjudicate and enforce the rules. All of HQ's subsidiaries merely act as agents of HQ. The subsidiaries are only given the duties to carry out HQ's policies including how to pay, how much to pay, when to pay, who to pay, and why certain employee is paid certain amount. These policies are all formulated by HQ.

14. All 67 H Mart stores ("the H Marts") are engaged in related activities, share common ownership, and have a common business purpose:

(a)    The H Marts are commonly owned and operated by CEO Il Hyun Kwon and his family;

(b)    The H Marts are advertised jointly as a common enterprise on Defendants' website, www.hmart.com;

(c)     The H Marts share a common logo and similar items, similar sales event, with many identical items;

(d)     The H Marts share payroll methods and have a single, centralized system of labor relations for employees at all their locations;

(e)     Supplies are interchangeable among the the H Marts;

(f)     Employees are interchangeable among the H Marts.

(g)     In essence, HQ acts as a principal and all the other defendants acts as agents of H Mart, Inc.

15.     At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

16.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

17.     In June 4, 2015, HQ hired Plaintiff and until it terminated his employment in 2019, HQ assigned Seo to work at the following stores and warehouse locations:

a)     321 Broad Ave.Ridgefield, NJ 07657

b)     8911 Garden Grove Blvd.Garden Grove, CA 92844 operated by H Mart Garden Grove, LLC;

c)     801 Civic Center Drive Niles IL 60714, operated by H Mart Midwest Corp.;

d)     1295 E. Ogden Avenue, Naperville, IL 60563, operated by H Mart Midwest Corp.;

e)     34 E. Golf Rd. Schaumburg, IL 60173, operated by BK Schaumburg Inc.;

f)     4340 Pacific Coast Hwy, Torrence CA 90505, operated by H Mart Torrence LLC

g)     15933 Pioneer Blvd. Norwalk, CA 90650, operated by H Mart Norwalk, LLC

h)     963 E. Big Beaver Rd. Troy, MI 48083, operated by H Mart Troy, LLC.

i)     11966 Washingston Blvd. Whitter, CA 90606 operated by H Mart Logistics, Inc.

18.     The defendants, while nominally separate entities, was in fact treated as an integrated enterprise because their operation is completely integrated because all of them are managed by HQ. The CEO Il Hyeon Kwon and his family own all of the defendants and exercises sole financial control over the defendants. Most importantly, HQ is the sole entity that has control over labor relations: HQ makes all employment decisions for all defendants. None of the subsidiaries even has HR department or any employee who performed HR related tasks.

19.     Defendants share identical wage and hour policies, formulated by HQ and strictly enforce by the same. Simply put, HQ exercises complete control over all its subsidiaries. The subsidiaries are separate entities in nominal terms only

### STATEMENT OF FACTS

20.     On June 4, 2015, Plaintiff Kisu Seo was hired by Defendants to work in the department of Produce. Plaintiff's employment by Defendants was terminated on April 18, 2019.

21.     At the beginning of his employment, the Plaintiff went to H Mart at 321 Broad Ave, Ridgefield NJ 07657 for training.

22.     From March 1, 2016, to September 14, 2016, Plaintiff worked at the H Mart Norwalk located at 15933 Pioneer Blvd. Norwalk CA 90650 and H Mart Torrence located at 4340 Pacific Coast Hwy, Torrence CA 90505. He regularly worked from at least from 8 a.m. to 6 p.m. for 6 days a week.

23.     During this period, Plaintiff also worked at H Mart Carrolton at 2625 Old Denton Rd. #200 Carrollton, TX 75007 for about one week and H Mart Lakewood located at 20137 Pioneer Blvd., Lakewood, CA 90715. He started his work at 7:00~7:30 a.m. and ended at 10 p.m. every day.

24.     From September 26, 2016, to July 20, 2018, Plaintiff worked at H Mart Troy located at 2963 E. Big Beaver Rd. Troy MI 48083. Plaintiff worked six (6) or seven (7) days per week for ten (10) to eleven (11) hours per day, for a total of sixty (60) to seventy (70) hours per week.

25.     During his employment by Defendants, Plaintiff was paid at a fixed amount of $4,500 a month. Defendants did not pay plaintiff more wage when plaintiff worked more hours or paid him any overtime wage.

26.     From June 4, 2015, until April 18, 2019, Defendants willfully violated Plaintiff SEO's rights by paying him on a fixed salary basis, in violation of the FLSA because Plaintiff SEO was a non-exempt employee who must be paid on an hourly basis.

27.     At all relevant times, Plaintiff worked a combined total of more than forty (40) hours each workweek. However, Defendants failed to pay him all of the overtime premium due for those hours he worked in excess of forty (40) each workweek.

28.     H Mart, Inc. is a domestic business corporation organized under the laws of the State of Delaware with an address for service of process located at 251 Little Falls Drive, Wilmington DE 19808. H Mart, Inc. is also registered in the state of California as a foreign corporation with an address for service of process located at 11966 Washington Blvd. Whittier CA 90606. H Mart, Inc. operates all of the H Marts' locations.

29.     H Mart Companies, Inc., H Mart American Dream LLC, H Mart Holdings Inc. are domestic business corporations and limited liability companies organized under the laws of the State of New Jersey, with an address for service of process at 300 Chubb Ave. Lyndhurst NJ 07071. H Mart Companies, Inc, H Mart American Dream LLC, and H Mart Holding Inc. operate all of the H Marts' locations.

30.     H Mart Logistics, Inc is a domestic business corporation organized under the laws of the State of California, with an address for service of process at 11966 Washinton Blvd., Whittier, CA 90606.

31.     H Mart Midwest Corp is a domestic business corporation organized under the laws of the State of Illinois, with an address for service of process at 550 Barclay Blvd. Lincolnshire, IL

60069. H Mart Midwest Corp owns and operates H Mart warehouse located at 550 Barclay Blvd,
Lincolnshire IL, Super H Mart located at 801 Civic Center Dr. Niles IL 60714, and Super H Mart
at 1295 E. Ogden Ave, Naperville IL 60563.

32.     BK Schaumburg Inc d/b/a H Mart Fresh is a domestic business corporation organized
under the laws of the State of Illinois, with an address for service of process at 801 Civil Center
Dr. Ste A, Niles, IL 60714. BK Schaumburg Inc owns and operates H Mart Fresh located at 34 E.
Golf Rd. Schaumburg, IL 60173.

33.     H Mart Troy Inc d/b/a H Mart is a domestic business corporation organized under the laws
of the State of Michigan, with an address for service of process at 2963 E. Big Beaver Rd. Troy
MI 48083. H Mart Troy Inc owns and operates H Mart located at 2963 E. Big Beaver Rd. Troy MI
48083.

34.     IL YEON KWON is an owner and principal of all of the Corporate Defendants. IL YEON
KWON exercises operational control as it relates to all employees including Plaintiff. IL YEON
KWON frequently visited each of the H Mart locations. He exercises the power to (and also
delegates to managers and supervisors the power to) fire and hire employees, supervise and
control employee work schedules and conditions of employment, and determine the rate and
method of compensation of employees including those of Plaintiffs. At all times, employees could
complain to IL YEON KWON regarding any of the terms of their employment, and IL YEON
KWON had the authority to effect any changes to the quality and terms of employees'
employment, including changing their schedule, compensation, or terminating or hiring such
employees, and to reprimand any employees for performing their job duties improperly.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

35.     Plaintiff realleges and reavers Paragraphs 1 through 18 of Complaint as if fully set forth herein.

36.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

37.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

38.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

39.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff for hid hours worked in excess of forty (40) hours per workweek.

40.     Defendants willfully violated Plaintiff's rights by refusing to compensate them for off-the-clock hours during which they were required to work;

41.     Records, if any, concerning the number of hours worked by Plaintiff and the actual compensation paid to Plaintiff are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

42.     Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

43.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

44.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime premium, and an equal amount as liquidated damages.

45.     Plaintiff is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

   **WHEREFORE**, Plaintiff prays for a judgment against Defendants as follows:

   a.  A judgment in the amount of one and one-half times Plaintiff's regular rate for all hours which Plaintiff worked in excess of forty (40) hours per week;

   b.  Liquidated damages in an amount equal to the amount of unpaid overtime compensation found due;

   c.  Reasonable attorney's fees and costs incurred in filing this action; and

   d.  Such other and further relief as this Court deems appropriate and just.

## COUNT II
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

46.     All allegations of the Complaint are expressly incorporated herein and Plaintiff repeats and realleges each and every allegation set forth in this Complaint as though set forth fully at length herein.

47.     This Court has supplemental jurisdiction over the matters alleged herein pursuant to 28 U.S.C. §1367.

48.     The matters set forth in this Count arise from Defendant's violation of the overtime compensation provisions of the Illinois Minimum Wage Law 820 ILCS 105/4a. Plaintiff brings this action pursuant to 820 ILCS 105/12(a).

49.     Pursuant to 820 ILCS 105/4a, for all weeks during which Plaintiff worked in excess of forty (40) hours, Plaintiff was entitled to be compensated at one and one-half times their normal hourly rate of pay for hours worked in excess of forty (40) hours per week.

50.     Defendants failed to compensate Plaintiff's overtime wages for hours worked in excess of forty (40) in individual workweeks.

51.     Defendants violated the Illinois Minimum Wage Law by not compensating Plaintiff's overtime wages for hours worked in excess of forty (40) in individual workweeks.

52.     Defendants willfully violated the Illinois Minimum Wage Law by refusing to compensate Plaintiff at one and one-half times their regular rate of pay for hours worked in excess of forty (40) hours per week.

53.     Pursuant to 820 ILCS 105/12(a), Plaintiff is entitled to recover unpaid wages for at least three years prior to the filing of this suit, plus punitive damages in the amount of two percent (2%) per month of the amount of underpayments.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants as follows:

A.     A judgment in the amount of one and one-half times Plaintiff's hourly wage rate for all hours which Plaintiff worked in excess of forty (40) hours per week

B.     Punitive damages pursuant to the formula set forth in 820 ILCS105/12(a);

C.     Reasonable attorney's fees and costs incurred in filing this action; and

D.     Such other and further relief as this Court deems appropriate and just.

**COUNT V**
**Violation of the Illinois Wage Payment and Collection Act**
**Failure to Pay Claims**

54.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint into this count.

55.     The Illinois Wage Payment & Collection Act, 820 ILCS §115/3 et seq., requires that "every employer shall be required, at least semimonthly, to pay every employee all wages earned during the semi-monthly pay period" and pay "final compensation" at the time of separation, if possible, or if not, by the next regularly scheduled payday for the employee.

56.     Plaintiff and defendants entered into a written agreement regarding planitiff's pay and the agreement is in defendant HQ's custody. During the applicable statute of limitations, by the course of conduct set forth above, Defendants have failed to pay Plaintiffs all wages due in violation of the Illinois Wage Payment & Collection Act, 820 ILCS §115/3 et seq.

57.     Because Defendants failed to properly pay wages due as required by law, Plaintiffs are entitled under the Illinois Wage Payment & Collection Act, 820 ILCS §115/3 et seq. to recover all wages due, two percent interest per month on all wages due until fully paid, costs, and reasonable attorneys.

**WHEREFORE**, Plaintiffs, on behalf of themselves, pray for relief as follows:

A.     A declaration that Defendants are financially responsible for notifying the FLSA Collective of its alleged wage and hour violations;

B.     Judgment against Defendants for an amount equal to Plaintiff unpaid minimum wages and overtime wages at the applicable rates;

C.     A finding that Defendants' conduct was willful;

D.     An equal amount of the minimum wages and overtime wages as liquidated damages;

E.     All costs and attorney' fees incurred prosecuting these claims, including expert fees;

F.     Pre-judgment and post-judgment interest, as provided by law;

G.     Leave to add additional Plaintiff by motion, the filing of written consent forms, or any other method approved by the Court; and

H.     Such further relief as the Court deems just and equitable.

## COUNT VI
### Retaliation

58.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of this Complaint into this count.

59.     Defendant HQ decided to sponsor plaintiff for a Green Card. Among immigrants who do not have permanent residency status in the U.S., earning a Green Card is highly coveted and many immigrants will go above and beyond what they are required to work in order to achieve the permanent resident status. In fact, many immigrants who are sponsored by their employer for a Green Card often say that their work condition is "slave like" because out of fear of falling out of favor with their employers, employees who get sponsored often do not complaint about work conditions or terms. Such unspoken rule is pervasive among immigrant society. Those sponsored employees are expected to work harder and longer without receiving additional pay and most dare to speak out for their lawful rights.

60.     While plaintiff was assigned to work at the H Mart warehouse in L.A., one day plaintiff arrived at work at 6:15 a.m., 15 minutes later that his normal start time. The warehouse chief Mr. Jang Won Lee saw plaintiff arriving at 6:15 a.m., and told plaintiff to work the required hours. When plaintiff complained to Mr. Lee that plaintiff was working over and beyond the required hours without getting paid additional wage, Mr. Lee told plaintiff "I don't know about the overtime pay. You need to talk to the headquarter. Just make sure to arrive at work on time." Plaintiff was later transferred to another H Mart branch. The decision to transer plaintiff was made

by the headquarter H Mart, Inc. Such decision was made after plaintiff complained about not receiving overtime pay and in retaliation.

61.     On or about July 1, 2016, plaintiff was leaving work around 6:10 p.m. When Plainitff said goodbye to the branch manager Sung Moon Yoon and assistant department head Mr. Park, the branch manager Yoon asked plaintiff "are you leaving already?" Assistant department head Mr. Park commented "You are leaving early, aren't you?" Plaintiff responded by saying "my hours are from 8 a.m. to 6 p.m. so I am not leaving early." Mr. Yoon and Park shook their head and said "enough."

62.     When Seo continued to leave at hours he was supposed to leave and not work additional hours with no pay that he was expected to do as a Green Card sponsor receipient, Mr. Park and the store manager warned Seo several times that he was being given "the last chance:" to do as they expected him to do which is to keep his mouth closed and work additional hours for the same pay he was getting.

63.     When Seo complained and did not perform extra hours of work with no pay, defendants retaliated by stop sponsoring him for a Green Card and also frequently transferred him to different stores in different states which made Seo's life more difficult since he had to start over at each new location.

64.     While plaintiff was working for Troy, MI store, on his day off, he was ordered to report to the store because someone from the upper management from HQ was visiting the store. When Mr. Seo told the store manager that it was his off day, the manager sounded incredulous and told Seo to be "a team player and help out." Another off day, Seo was at home resting. The manager called Seo and told him that "Director Mr. Cho is visting the store and I need to save my face so hurry up and come." Over the course of years, several times Seo was ordered to come in to a store when it was his off day. He did come in and defendants did not pay for such work. The store manager was

upset that Seo was complaining about coming in to the store on his off day. He made numerous threats about Seo's job safety.

65.     Seo suffered severe emotional distress after receiving constant threats from his superiors for not staying beyond required hours and work with no pay or not being a team player and come in to the stores on his off days. Seo's superiors often made threat of firing him and in fact did fire him for openly complaining about his work conditions.

66.     Seo's frequent transfers and discontinuation of sponsoring for Green Card is clear retaliation for Seo not accepting the unspoken rules of "be grateful for being sponsored for a Green Card and work like a slave."

67.     Seo was simply engaged in protected activity and defendants' frequent transfer, termination and discontinuation of Green Card sponsorship is unlawful retaliation against Seo.

        **WHEREFORE**, Plaintiffs pray for relief as follows:

        A.      A finding that Defendants' conduct was unlawful retaliation;

        B.      Award punitive damages;

        C.      Lost wages as a result of the retaliationary discharge;

        D.      Award compensatory damages;

        E.      All costs and attorney' fees incurred prosecuting these claims, including expert

fees;

        F.      Pre-judgment and post-judgment interest, as provided by law; and

        G.      Such further relief as the Court deems just and equitable.


## JURY TRIAL

A jury trial is demanded on all Counts.

/s/ Ryan Kim
Ryan J. Kim

Attorney for Plaintiff
RYAN KIM LAW, P.C.
222 Bruce Reynolds Blvd. Suite 490
Fort Lee, NJ 07024
Attorney for Plaintiff
ryan@ryankimlaw.com

NOTICE OF CONSENT TO BECOME A PARTY PLAINTIFF IN
A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT

By my signature below I represent to the Court that I had been employed by H Mart Inc. within
the prior 3 years, that I have worked for Defendants hours in excess of forty in individual work
weeks, and have not been paid all of the overtime wages owed to me pursuant to 29 U.S.S. 207. I
authorize through this Consent the filing and prosecution of this Fair Labor Standards Act action
in my name and on behalf of all persons similarly situated to myself.

My name is: Kisu Seo

My signature:  /s/ Kisu Seo

Date I signed this Notice: December 16, 2020