UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KISU SEO, on behalf of himself and all other known Plaintiffs similarly situated known and unknown, § § § § Plaintiff, § § v. § Case No: 1:19-CV-03248 § H MART INC., H MART HOLDINGS, § INC., H MART LOGISTICS, INC., H § MART AMERICAN DREAM, LLC, § H MART MIDWEST CORP. DBA § H MART, BK SCHAUMBERG INC., § H MART TROY, LLC, H MART § TORRANCE LLC, H MART GARDEN § GROVE, LLC, H MART NORWALK § LLC and IL YEON KWON, § § Defendants. § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(b)(2) and 12(b)(6)**

Plaintiff Kisu Seo, on behalf of himself and all other Plaintiffs similarly situated known and unknown ("Plaintiff" or "Seo"), responds to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to FRCP 12(b)(2) and 12(b)(6) (doc. 79), filed March 12, 2021.

## I. INTRODUCTION

In his amended complaint, Plaintiff has alleged that defendants work together—under the control and direction of defendant H Mart Inc.—as joint employers or a single enterprise to run a network of nearly seventy grocery stores. The subsidiary entities are little more than shells used to perform actions at the direction of their parent. Because of this integrated enterprise, all of the

entities are liable for the statutory violations alleged by Seo, and all are subject to personal jurisdiction in Illinois.

For nearly four years, Seo worked significant overtime for defendants and was often called to work on days he was scheduled off. But Seo was compensated for none of this additional time in violation of state and federal law. When he complained about defendants' unlawful employment practices, he was repeatedly transferred to stores throughout the country, and ultimately defendants revoked his immigration sponsorship, and his employment was terminated.

The amended complaint alleges facts to support this Court's exercise of personal jurisdiction over all defendants and states plausible claims. Defendants' motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff Kisu Seo, on behalf of himself and all other Plaintiffs similarly situated known and unknown, filed this action seeking to recover overtime pay and other damages for defendants' failure to pay him overtime during the nearly four years he worked for them. Plaintiff's Second Amended Complaint, filed February 11, 2021 (doc. 70) (hereinafter, the "Complaint"), alleges facts sufficient for the Court to exercise personal jurisdiction over all defendants and states plausible claims that should not be dismissed by the Court.

**A.    Seo is hired to work at H Mart.**

Defendant H Mart Inc. ("HQ") operates a chain of Asian grocery stores and logistics companies. Compl. at ¶ 4. Through numerous subsidiaries, HQ runs these 67 stores as a single integrated enterprise under the name "Super H Mart" or "H Mart." *Id*.

Seo alleges that he was he was hired and fired by HQ but that he worked at a variety of H Mart locations during the course of his employment between 2015 and 2019. *Id*. at ¶¶ 5-7. He also

alleges that he worked at various locations owned by other H Mart entities and that each of those entities is a joint employer with HQ or part of a single enterprise. *Id*. at ¶¶ 2, 4. He alleges that "all of the H Mart" locations are owned by defendants HQ, H Mart Companies, Inc. ("H Mart Companies"), H Mart American Dream LLC ("H Mart American"), and H Mart Holdings, Inc. ("H Mart Holdings"). *Id*. at ¶¶ 28, 29.

Specifically, Seo alleges that he was interviewed by HQ and began working for his first H Mart on June 4, 2015. *Id*. at ¶ 5. Seo pleads that he was directed to move to New Jersey to be trained at an H Mart store in Ridgefield, New Jersey and that he worked at the New Jersey location until October 24, 2015. *Id*. at ¶ 5.

Seo alleges that he was then assigned to work at the H Mart in Garden Grove, California and worked there beginning on October 25, 2015 for a few months. *Id*. at ¶ 6. Seo alleges that the Garden Grove location is operated by H Mart Garden Grove, LLC. ("H Mart Garden Grove"). *Id*. at ¶ 17(b).

Seo contends that he then was reassigned by HQ to work a logistics warehouse in Whittier, California. *Id*. at ¶ 6. He alleges that this location is operated by H Mart Logistics, Inc. (H Mart Logistics"). *Id*. at ¶ 17(i).

After working at the Whittier warehouse, Seo alleges that he was reassigned to work an H Mart location in Norwalk, California. *Id*. at ¶ 6. Seo alleges that the Norwalk location is operated by H Mart Norwalk LLC ("H Mart Norwalk"). *Id*. at ¶ 17(g).

Next, Seo contends he was ordered to work at a new H Mart location in Torrence, California. *Id*. at ¶ 6. This location is alleged to have been operated by H Mart Torrence LLC ("H Mart Torrence"). *Id*. at ¶ 17(f).

After working at various California locations, Seo alleges that HQ transferred him to the H Mart location in Troy, Michigan, where he worked from September 26, 2016 to July 19, 2018. *Id*. at ¶ 6. Seo alleges that this location is operated by H Mart Troy, LLC ("H Mart Troy"). *Id*. at ¶ 17(h).

Seo alleges that he was next transferred to the Naperville, Illinois H Mart location, where he worked from July 22, 2018 to October 7, 2018. *Id*. at ¶ 7. Seo alleges that this location is operated by H Mart Midwest Corp. ("H Mart Midwest"). *Id*. at ¶ 17(d).

Finally, Seo alleges that the last H Mart location he worked at was in Schaumburg, Illinois, where he worked from October 8, 2018, until he was fired on April 17, 2019. *Id*. at ¶ 7. This location is operated by BK Schaumburg Inc. dba H Mart Fresh ("BK Schaumburg"). *Id*. at ¶ 17(e).

**B.     HQ wholly controls its subsidiaries and makes all employment and operational decisions for all of the stores.**

Seo contends that defendants H Mart American, H Mart Holdings, H Mart Logistics, H Mart Companies, H Mart Midwest, BK Schaumburg, H Mart Troy, H Mart Torrence, H Mart Garden Grove, and H Mart Garden Grove are all subsidiaries of HQ. *Id*. at p. 1 & ¶ 2. He alleges that throughout his employment, "HQ and its subsidiaries had complete control over [his] employment." *Id*. at ¶ 8.

Although he pleads that he worked at various locations operated by various subsidiaries, HQ was involved in all aspects of Seo's employment, no matter the direct subsidiary operating the location. He contends that HQ "determined when Seo [went] to work, where to work, how much money to pay him, how many hours to work, what kind of work to do, to whom he reports to, and whether he should be disciplined." *Id*. Seo also alleges that although he was working at the H Mart in Schaumburg when he was terminated, "HQ ultimately decided to terminate" his employment.

*Id*. Seo also contends that all employment records for HQ and the subsidiaries were maintained by HQ in its New Jersey office. *Id*. at ¶ 9.

In amending his Complaint, Seo has alleged numerous specific acts taken by HQ on behalf of all of its subsidiaries, covering all aspects of human resources, including recruiting, hiring, training, paying, disciplining, and terminating employees. *Id*. at ¶ 10. He contends that "HQ formulates every aspect[] of employment and labor rules, guidelines, and policies for . . . itself and its subsidiaries." *Id*. at ¶ 11; *see also id*. at ¶¶ 12-13.

Seo also alleges that HQ manages each H Mart location, which encompasses a breadth of activities from ensuring that each location complies with applicable laws and regulations to providing employee policies to visiting locations to conduct inspections. *Id*. at ¶ 10. He pleads that "HQ exercises complete control over all . . . operation of its subsidiaries." *Id*. at ¶ 13.

With respect to the relationships between the corporate entities, Seo alleges that all of the H Mart stores "share common ownership and have a common business purpose." *Id*. at ¶ 14. He alleges that all are "commonly owned and operated by [the] CEO . . . and his family," that all "are advertised jointly as a common enterprise" on the internet, that the stores "share payroll methods and have a single, centralized system of labor relations for employees at all their locations," that supplies and employees are "interchangeable among" the stores, and that "HQ acts as a principal and all the other defendants act[] as agents of" HQ. *Id*. at ¶ 14.

Seo further alleges that defendants are an "integrated enterprise" with integrated operations that "are managed by HQ." *Id*. at ¶ 18. He alleges that "HQ exercises complete control over all its subsidiaries. The subsidiaries are separate entities in nominal terms only." *Id*. at ¶ 19.

He also alleges that defendant Il Yeon Kwon ("Kwon") is the owner and principal of all of the corporate entities and that he "exercises operational control as it relates to all employees,"

including Seo. *Id*. at ¶ 34. Seo pleads that Kwon frequently visits each store and warehouse location and that he has the power to "fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees," including him. *Id*. Further, Kwon has "the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly." *Id*.

**C.    Seo worked significant, uncompensated overtime for defendants.**

Seo was employed by defendant HQ from June 4, 2015, until April 27, 2019. Compl. ¶¶ 5, 7, 20. He alleges specific facts about the locations he worked, the time periods he worked at each location, and the hours and days worked at each location—which exceed 40 hours per week in every instance. *Id*. at ¶¶ 22-24.

Seo alleges his monthly pay was a fixed amount each month and that defendants "did not pay [him] more wage when [he] worked more hours [and did not pay] him any overtime wage." *Id*. at ¶ 25. Seo also alleges that he "was a non-exempt employee who must be paid on an hourly basis." *Id*. at ¶ 26; *see also id*. at Notice of Consent to Become a Party Plaintiff in a Collective Action under the FLSA.

**D.    Plaintiff's complaints about unpaid overtime led to retaliatory transfers, revocation of sponsorship of his green card, and termination.**

Seo also alleges that he complained about defendants' unlawful employment practices on several occasions and that defendants retaliated against him for such complaints. Seo identifies several instances during which he complained about not being paid for overtime work:

- Seo "complained to Mr. Lee that [he] was working over and beyond the required hours without getting paid additional wage" and HQ later transferred him to another H Mart branch in retaliation. Compl. at ¶ 60.

- When Seo refused to work overtime without additional pay, he was warned that he was being given "the last chance" because defendants "expected him to . . . keep his mouth closed and work additional hours for the same pay he was getting." *Id.* at ¶ 62.

- When Seo "complained and did not perform extra hours of work with no pay, defendants retaliated by [revoking their] sponsorship . . . for a Green Card and also frequently transferred him to different stores in different states which made [his] life more difficult[.]" *Id.* at ¶ 63.

- When Seo refused to work on days he was scheduled off or complained about coming to the store on his off day, his supervisor "made numerous threats about Seo's job safety." *Id.* at ¶ 64.

In addition to multiple transfers among H Marts, defendants retaliated against Seo by discontinuing their sponsorship of his Green Card and terminating his employment. *Id.* at ¶¶ 65-67.

### III. ARGUMENT

**A. This Court has personal jurisdiction over the Foreign Defendants.**

There is no dispute that this Court has personal jurisdiction over defendants HQ, H Mart Midwest, BK Schaumburg, and Kwon. The motion to dismiss for lack of personal jurisdiction is limited to the group termed the "Foreign Defendants": H Mart American, H Mart Holdings, H Mart Logistics, H Mart Companies, H Mart Troy, H Mart Torrence, H Mart Garden Grove, and H Mart Norwalk.

As the United States Court of Appeals for the Seventh Circuit has acknowledged, "a parent corporation is not liable for violations of the [FLSA] by its subsidiary unless it exercises significant authority over the subsidiary's employment practices." *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013) (citation omitted). The Complaint includes allegations of HQ's significant authority over the subsidiaries' employment practices.

Seo alleged that while he worked at various H Mart locations operated by subsidiaries, HQ exercised control over the subsidiaries' employment practices, including a laundry list of

employment functions which Seo alleges were "tasks . . . done exclusively by HQ for all subsidiaries" relating to recruiting, interviewing, hiring, overseeing, paying, disciplining, and terminating employees for each of the subsidiaries. Compl. at ¶ 10.

Seo pleads that "HQ formulates every aspect[] of employment and labor rules, guidelines, and policies for . . . itself and its subsidiaries. The branch stores do not have a say in formulation of any rules or policies as they are simply mandated to be implemented by HQ." *Id.* at ¶ 11; *see also id.* at ¶¶ 12-13.

While the Foreign Defendants argue that alleging that they are "joint employers" or a "single enterprise" under the FLSA does not meet Seo's burden of showing personal jurisdiction over them, the substance of his allegations establish that the subsidiaries are dominated by HQ and therefore are subject to personal jurisdiction in Illinois, as HQ and the Illinois defendants are.

Moreover, several courts have held that alleging that multiple entities are "joint employers" or a "single enterprise" under the FLSA is sufficient to survive a motion to dismiss for lack of personal jurisdiction. In *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 606 (D. Md. 2014), the court held that "[i]f all four . . . entities are a . . . 'single enterprise' under the FLSA, personal jurisdiction is satisfied because [one of the entities] is incorporated in Maryland and has sufficient minimum contacts with the jurisdiction." *See also Bishop v. Consolidated Natural Gas, Inc.*, 2000 U.S. Dist. LEXIS 218, at *7 (E.D. La. Jan. 5, 2000); *Hajela v. ING Groep*, 582 F. Supp. 2d 227, 238 (D. Conn. 2008); *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 886 (D. Minn. 2010); *Berry v. Lee*, 428 F. Supp. 2d 546, 558 (N.D. Tex. 2006).

Here, it is undisputed that several entities that are part of the "single enterprise" or that are "joint employers" are subject to personal jurisdiction in Illinois. Accordingly, the Foreign

Defendants are also subject to personal jurisdiction in Illinois and the motion should be denied on that basis.

In the alternative, Seo survives the Foreign Defendants' motion because he has alleged facts that allow this Court to pierce the corporate veil and impute HQ's undisputed Illinois contacts to its subsidiaries, including the Foreign Defendants.

> In Illinois, piercing the corporate veil is warranted if (1) there is such unity of interest and ownership that the separate personalities of the corporation no longer exist; and (2) circumstances are such that adherence to the fiction of separate corporate entities would sanction a fraud or promote injustice.

*Continental Ins. Co. v. Loewen Group*, 1998 U.S. Dist. LEXIS 3615, at *26 (N.D. Ill. Mar. 16, 1998). In determining whether veil-piercing is warranted, Illinois courts look at a number of factors, including whether "corporations maintained adequate records," whether "one of the corporations . . . treated the assets of the other corporation as its own," and "how much control the parent executes over the subsidiary[.]" *Id*. at *26-27 (citations omitted).

Courts in this district have held that "if a plaintiff alleges that a parent is the alter ego of its subsidiary, the court should not dismiss his complaint if he alleges *any facts* supporting an inference that the corporations act as a single entity." *Compton v. Walt Disney Co*., 2005 U.S. Dist. LEXIS 63802, at *7 (N.D. Ill. July 26, 2005) (citations omitted and emphasis added); *see also Kellers Sys., Inc. v. Trans. Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1001 (N.D. Ill. 2001) ("Where a claimant fairly alleges an entity exists as the alter ego of another and provides factual manifestations supporting the existence that the two operate as a single entity, a motion to dismiss will be denied.") (citation omitted); *Ishkhanian v. Forrester Clinic S.C.*, 2003 U.S. Dist. LEXIS 11041, at *9-10 (N.D. Ill. June 25, 2003) (denying Rule 12(b)(2) motion and rejecting argument that a plaintiff must make a "substantial showing" to pierce the corporate veil under Illinois law).

Here, Seo has alleged multiple facts relevant to the question of whether the subsidiaries are, in effect, simply extensions of HQ, over which personal jurisdiction is undeniably proper. He has alleged HQ operates all of its stores "as a single integrated enterprise." Compl. at ¶ 4. He alleges that regardless of which location he worked at, the decisions about where he was to work and whether he was to be transferred were always made by HQ. *Id*. at ¶¶ 5-8. In paragraph 10 of the Complaint, Seo includes a long list of tasks "done exclusively by HQ for all subsidiaries" relating to all human resources, management, and operations functions. *Id*. at ¶ 10. HQ ignores corporate formalities and mandates every aspect of "employment and labor rules, guidelines, and policies for . . . itself and its subsidiaries." *Id*. at ¶ 11. It "exercises complete control over all . . . operation of its subsidiaries" and all of "HQ's subsidiaries merely act as agents of HQ." *Id*. at ¶ 13. He also alleges that the stores "are commonly owned and operated by [Kwon]," that all "share payroll methods and have a single, centralized system of labor relations for employees at all their locations," and that "[s]upplies . . . [and e]mployees are interchangeable among" the stores. *Id*. at ¶ 14. *See also id*. at ¶¶ 18-19. Seo also alleges that the subsidiaries are "separate entities in nominal terms only." *Id*. at ¶ 19.

These allegations are sufficient to allege a "unity of interest and ownership" so that HQ and its subsidiaries are in effect a single entity. Dismissing the Foreign Defendants would promote injustice because it would ignore the reality of HQ's singular control over all aspects of the Foreign Defendants' operations. Applying the standard of Rule 12(b)(2), the allegations in the Complaint, coupled with the absence of any controverting evidence presented by the Foreign Defendants, requires that the Court deny the motion to dismiss for lack of personal jurisdiction.

### B.	Plaintiff has stated a claim for violation of the FLSA.

#### 1.	The Complaint contains sufficient facts to state a claim for unpaid overtime.

To plead a claim for unpaid overtime, courts in this district have not required "plaintiffs to plead infinitesimal details to render them plausible or provide defendants with fair notice of the claims against them." *Brown v. Club Assist Rd. Serv. U.S., Inc.*, 2013 U.S. Dist. LEXIS 133990, at *21-22 (N.D. Ill. Sept. 19, 2013) (citation omitted). "[T]here is no rule of law that requires Plaintiffs to allege their hourly wage, the dates on which the alleged violations took place, or the specific tasks they performed off the clock." *Victoria v. Alex Car, Inc.*, 2012 U.S. Dist. LEXIS 43460, at *14 (N.D. Ill. Mar. 29, 2019).

Rather, and in compliance with the federal pleading standard, Seo has provided sufficient details to put defendants on notice of his claim. He asserts that he worked significant overtime while he was a "non-exempt employee who must be paid on an hourly basis." Compl. at ¶ 26.

Specifically, Seo alleges that from March 1, 2016 to September 14, 2016, he worked ten hours a day, six days a week at two H Mart locations in California. *Id*. at ¶ 22. He also alleges that during this period, he worked at other locations on some occasions in excess of fourteen hours a day. *Id*. at ¶ 23. Seo alleges that from September 26, 2016 to July 20, 2018, he worked sixty to seventy hours per week at a location in Michigan. *Id*. at ¶ 24.

He alleges that throughout this period, despite working significant overtime, he received a fixed monthly wage and was not paid "when [he] worked more hours[.]" *Id*. at ¶ 25. Seo has pleaded that he worked for more than forty hours a week at several locations and during several specific periods of time, stating a claim for unpaid overtime.

Seo's allegations are similar to those found to be sufficient in *Brown*, where plaintiffs alleged that "since July 2009, they have worked an average of 85 hours a week but have not been

properly compensated for that time." 2013 U.S. Dist. LEXIS 133990, at *21. Seo has alleged at least as many facts as the *Brown* court considered in denying a motion to dismiss for failure to state a claim for overtime pay.

Seo's allegations also exceed the conclusory, bare bones facts alleged in other cases where courts have granted motions to dismiss for failure to state a claim. *See Wilson v. Pioneer Concepts, Inc.*, 2011 U.S. Dist. LEXIS 100757, at *6 (N.D. Ill. Sept. 1, 2011) (granting motion where plaintiff alleged that she and other unidentified employees "worked overtime without pay"); *Robertson v. Steamguard*, 2012 U.S. Dist. LEXIS 51582, at *3 (N.D. Ill. Apr. 12, 2012) (granting motion where "the court cannot even ascertain when [plaintiff] worked for [defendant] or if he is currently employed there").

Defendants cite no authority in support of their contention that Seo's allegation that he is a non-exempt employee is insufficient under Rule 12(b)(6). In fact, federal courts in Illinois have rejected similar arguments:

> The Complaint, say the Defendants, provides no factual information regarding job duties, hours worked, wages earned, "or any other factual information supporting said conclusory statements." But detailed factual allegations are not required under the federal pleading rules. And the level of detail the Defendants demand is not even required at the evidentiary stage.

*Gonzalez v. Home Nursery, Inc.,* 2015 U.S. Dist. LEXIS 187392, at *8 (S.D. Ill. Sept. 30, 2015) (citation omitted).

Plaintiff not only alleges that he was a non-exempt worker, but his notice of consent filed with the Complaint also affirms his representation that has worked overtime and has not been paid the overtime wages due to him. Compl., Notice of Consent to Become a Party Plaintiff in a Collective Action under the FLSA. These allegations and representations satisfy the liberal

pleading requirements of the Federal Rules, and Defendants' motion on this ground should be denied.

### 2. The Complaint sufficiently alleges that Defendants are jointly liable as "joint employers."

Seo has also alleged that he was jointly employed by HQ and its subsidiaries under the FLSA. "It is well accepted that an employee may have more than one employer at a time" and "entities that share common control over an employee may be deemed 'joint employers' under the FLSA." *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017). The Seventh Circuit has recognized that for "a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending under the specific facts of each case." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008); *see also Katz v. Nw. Orthopaedics & Sports Med. Ltd.*, 2020 U.S. Dist. LEXIS 73225, at *25 (N.D. Ill. Apr. 27, 2020) ("The Seventh Circuit uses a similar analysis when considering who is a joint employer under both the FMLA and the FLSA.").

In determining whether employers are "joint employers," courts look to the "economic realities" of working relationships and focus on whether the defendant "(1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedule or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Ivery*, 280 F. Supp. 3d at 1128 (citations omitted).

Here, each of these factors supports the argument that although Seo worked at various H Mart locations, each subsidiary is a joint employer with HQ. HQ had the power to hire and fire employees. Compl. at ¶¶ 10, 12-13. HQ supervises and controls employee work schedules and conditions of employment. *Id.* at ¶¶ 10, 11, 13. HQ determines the rate and method of payment.

*Id*. at ¶¶ 10, 11, 13, 18, 19. Finally, HQ—and only HQ—maintains employment records for all of the subsidiaries. *Id*. at ¶¶ 9, 10, 13, 14.

In addition, Seo has adequately alleged that Kwon is liable under the FLSA. Seo has alleged that Kwon "exercises operational control as it relates to all employees including Plaintiff." *Id*. at ¶ 34. He pleads that Kwon "frequently visited each of the H Mart locations" and "exercises the power to . . . fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff[.]" *Id*. Seo further alleges that Kwon "had the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees, and to reprimand any employees for performing their job duties improperly." *Id*.

Seo has alleged that Kwon has the "significant ownership interests, day-to-day control of operations, and involvement in the supervision and payment of employees" to be "personally liable for the corporation's failure to pay owed wages." *Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (citations omitted).

Seo's allegations state a claim for violation of the FLSA against defendants.

**C.     Plaintiff has stated a claim for violation of the IMWL and IWPCA.**

Because Seo has stated a claim under the FLSA, so too has he stated a claim pursuant to the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA"). *Zampos v. W&E Commc'ns, Inc.*, 970 F. Supp. 2d 794, 806 (N.D. Ill. 2013).

**D.     Plaintiff has stated a claim for retaliation.**

To state a claim for retaliation under the FLSA, a plaintiff must allege that: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse action by her employer or

former employer; and (3) a causal link exists between the protected expression and adverse action." *Beltran v. Brentwood North Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006) (citation and quotation omitted).

Here, Seo made repeated complaints about defendants' failure to pay him overtime and to require him to work on his off days. Compl. at ¶¶ 60-64. Such oral complaints satisfy the first element for an FLSA retaliation claim. *DeWalt v. Greencroft Goshen, Inc.*, 902 F. Supp. 2d 1127, 1140 (N.D. Ind. 2012). Seo also suffered adverse actions. He was repeatedly transferred, defendants revoked their sponsorship of his green card, and he was ultimately terminated. Compl. at ¶¶ 65-67. These actions are "adverse actions" under the FLSA. *Campbell v. HSA Managed Care Sys.*, 1997 U.S. Dist. LEXIS 15361, at *20-21 (N.D. Ill. Sept. 22, 1997). Seo has also alleged that these adverse actions were "unlawful retaliation" against him for his complaints about defendants' unlawful employment practices. Compl. at ¶¶ 66-67.

Defendants' only argument on Seo's retaliation claim is that he has not alleged any retaliatory conduct in Illinois. However, Seo has alleged that defendants are jointly liable as joint employers under the FLSA. Moreover, he has alleged that all of his transfers were retaliatory conduct, which includes his transfers to and within Illinois. *Id*. at ¶ 7. Finally, to the extent his termination was retaliatory, Seo was terminated while working at an H Mart in Schaumburg, Illinois. *Id*.

Accordingly, the Court should not dismiss Seo's claim for retaliation.

### IV. CONCLUSION

For the foregoing reasons, Seo respectfully requests that the Court deny Defendants' motion in its entirety.

Respectfully submitted,

 */s/ Ryan J. Kim*
Ryan J. Kim
RYAN KIM LAW, P.C.
222 Bruce Reynolds Blvd., Suite 490
Fort Lee, NJ 07024
ryan@ryankimlaw.com

ATTORNEY FOR PLAINTIFF