## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KISU SEO, on behalf of himself and all
other Plaintiffs similarly situated
known and unknown,

Plaintiff,

v.

H MART INC., H MART HOLDINGS,
INC., H MART LOGISTICS, INC., H
MART AMERICAN DREAM LLC, H
MART COMPANIES, INC., H MART
MIDWEST CORP. d/b/a SUPER H
MART, BK SCHAUMBURG, INC., H
MART TROY, LLC, H MART
GARDEN GROVE, LLC, H MART
NORWALK LLC and IL YEON
KWON,

Defendants.

Case No. 19-cv-03248

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Kisu Seo brings this second amended complaint ("SAC") against

multiple defendants alleging he worked overtime hours without proper compensation

and when he complained about those conditions, he faced retaliation. Defendants are

or are connected with a supermarket chain. Dkt. 70. Seo brings claims under Fair

Labor Standards Act, 29 U.S.C. § 201, *et seq*. (FLSA), Illinois Minimum Wage Law,

820 ILCS 105/1, *et seq*. (IMWL), and the Illinois Wage Payment and Collection Act,

820 ILCS 115, *et seq*. (IWPCA) and for retaliation. Defendants move to dismiss for

lack of personal jurisdiction and for failure to state a claim pursuant to Federal Rules

1

of Civil Procedure 12(b)(2) and 12(b)(6). [79]. For the reasons explained below, the Court grants the Rule 12(b)(2) motion and grants in part and denies in part the Rule 12(b)(6) motion.

## I.    Background

The following factual allegations are taken from the Second Amended Complaint (Dkt. 70) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670, 675 (7th Cir. 2016). H Mart (HQ) is a supermarket chain specializing in Asian foods with over 60 stores. In June 2015, Seo was hired by HQ as a produce buyer. HQ transferred Seo to Ridgefield, New Jersey, for training. Dkt. 70 ¶ 5. After training, HQ assigned Seo to work at a store in Garden Grove, California, and over the following four years Seo was transferred to a total of nine different H Mart locations and warehouses across the country, including California, Michigan, New Jersey, and Illinois. *Id.* at ¶ 17. On average, Seo worked from 8:00 a.m. to 6:00 p.m., six days a week, or 7:00 a.m. to 10:00 p.m. every day, depending on the location. *Id.* at ¶¶ 22-24. At all times during his employment, regardless of hours, Seo was paid $4,500 a month. *Id.* at ¶ 25. Seo contends that Defendants willfully violated his rights by paying him on a fixed salary basis even though he was a non-exempt employee who frequently worked overtime. *Id.* at ¶ 26.

Seo contends that HQ manages and operates all subsidiaries as an integrated enterprise and had complete control over Seo's employment. According to Seo, HQ "formulates every aspects [sic] of employment and labor rules, guidelines and policies

2

for all itself [sic] and its subsidiaries." *Id.* at ¶ 11. The subsidiaries are "given the duties to carry out HQ's policies." *Id.* at ¶ 13. Defendant Il Yeon Kwon ("Kwon") is the CEO of H Mart, Inc. and "exercises sole financial control over the [Defendants]." *Id.* at ¶18. He also makes all employment related decision for the defendants. *Id.*

On May 14, 2019, Seo filed this suit initially only naming H Mart Midwest Corp., BK Schaumburg, Inc., and Hye Joo Choi. Dkt. 1. On August 6, 2019, the Court denied Defendants' first motion to dismiss in light of Seo's intent to file an amended complaint. Dkt. 13. On August 28, 2019, when Seo did not file an amended complaint by the deadline, Defendants re-filed their motion to dismiss. Dkt. 15. On September 30, 2019, the Court extended Seo's deadline to file an amended complaint or respond to the motion to dismiss. Dkt. 24. Seo filed the first amended complaint on October 21, 2019, adding new defendants. Defendants again filed a motion to dismiss. Dkt. 34. This Court granted in part and denied in part Defendants' motion. Specifically, this Court found that it did not have personal jurisdiction over several defendants. Only two defendants remained, Hye Joo Choi and BK Schaumburg, Inc. Dkt. 54. Seo now brings his second amended complaint, renaming several previously dismissed subsidiary defendants and adding new defendants, (the H Mart CEO Il Yeon Kwon and three California based subsidiary H Marts), and adding an additional claim of retaliation. Defendants move to dismiss Seo's second amended complaint.[1]

## II.    Standard

---

[1] Seo has apparently abandoned his claim against Choi as she is not named in the current complaint.

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)).

Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction. But once the defendant moves to dismiss the complaint under Rule 12(b)(2), the plaintiff must demonstrate that personal jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

## III.    Analysis

### A. Personal Jurisdiction over Foreign Defendants

Defendants argue that this Court does not have personal jurisdiction over eight (8) of the subsidiary defendants: H Mart American Dream LLC, H Mart Holdings, Inc., H Mart Logistics, Inc., H Mart Companies, Inc., H Mart Troy, Inc., H Mart Torrence LLC, H Mart Garden Grove, LLC, and H Mart Norwalk, LLC (the "Foreign Defendants"). "The nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or specific to the claims made in the case." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). In determining personal jurisdiction, the Court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Id.* at 700. Seo has the burden of establishing a prima facie case of personal jurisdiction over these defendants. *Purdue Research*, 338 F.3d at 782. Neither party has submitted affidavits or other written evidentiary material, so the

Court determines whether the well-pleaded allegations in the complaint show Seo has met his burden.

Defendants argue that Seo cannot establish either general or specific personal jurisdiction over the Foreign Defendants. "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. And specific jurisdiction requires a defendant's contacts with the forum state to "directly relate to the challenged conduct or transaction." *Id*. at 702. The test for whether specific jurisdiction is appropriate is a three-pronged inquiry. The court considers whether "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities;" and (3) the exercise of jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart, Indiana*, No. 20-2919, 2021 WL 1827318, at *4 (7th Cir. May 7, 2021).

Seo does not specify whether he believes these defendants are subject to general or specific personal jurisdiction in Illinois. Rather, he argues that the various subsidiaries are "joint employers" or fall under a "single enterprise theory" and that is sufficient to establish personal jurisdiction.[2] Dkt. 81 at 7-8. In the alternative, Seo asks this Court to pierce the corporate veil and impute HQ's undisputed Illinois contacts onto all named defendants. *Id.* at 9.

---

[2] Seo does not argue the Foreign Defendants are subject to General Jurisdiction.

6

### 1. *Joint Employers and Single Enterprise Theory*

The Court previously rejected Seo's "joint employer" theory as a basis to establish personal jurisdiction. Dkt. 54 at 6. Seo has provided case law that supports his position that the "joint employer" test under the FLSA can provide the basis for a court to find it has personal jurisdiction over a foreign corporation. *See* Dkt. 81 at 8 ("several courts have held that alleging that multiple entities are "joint employers" or a "single enterprise" under the FLSA is sufficient to survive a motion to dismiss for lack of personal jurisdiction.") In *Gilbert v. Freshbikes, LLC,* 32 F. Supp. 3d 594, 606 (D. Md. 2014) the court denied the 12(b)(2) motion prior to further discovery and held that the "[i]f all four Freshbikes entities are a 'single employer' under Title VII or a 'single enterprise' under the FLSA, personal jurisdiction is satisfied because Freshbikes is incorporated in Maryland and has sufficient minimum contacts with the jurisdiction." *See Bishop v. Consolidated Natural Gase, Inc.,* No. CIV. A. 99-1363,2000 WL 6263 at *2 (E.D. La. Jan. 5, 2000) (applying Title VII joint employer analysis to determine whether personal jurisdiction over the defendant existed); *Hajela v. ING Groep,* 582 F. Supp. 2d 227, 238 (D. Conn. 2008) (prior to discovery, applying joint-employer analysis in FMLA case to deny Rule 12(b)(2) motion); *Martin v. Reliastar Life Ins. Co.,* 710 F. Supp. 875, 886 (D. Minn. 2010) and *Berry v. Lee,* 428 F. Supp. 2d 546, 558 (N.D. Tex. 2006). *But see, Wright v. Waste Pro USA Inc.,* 2019 WL 3344040, at *11 (D.S.C. July 25, 2019) ("the weight of the authority on this question has determined that the [joint employer/single integrated enterprise] theory applies only to liability and cannot be relied upon to create personal jurisdiction")

7

(collecting cases); *Mendez v. Pure Foods Mgmt. Grp., Inc.,* 2016 WL 183473, at *1–7 (D. Conn. Jan. 14, 2016) (finding that "legislators do not have that same flexibility to fashion a more relaxed standard of personal jurisdiction" and none of the [joint employer] theories "—which might be appropriate for determining employer liability at a later stage of this litigation—are appropriate for determining in the first instance whether this court can exercise personal jurisdiction over" out of state defendants).

The Court need not wade into this debate. As discussed *infra,* the Foreign Defendants do not qualify as joint employers with BK Schaumburg or H Mart Midwest. Seo does not allege that they exercise any sort of control over the others' operations. In addition, Seo has not presented any arguments that the Foreign Defendants (as distinct from HQ/Kwon) purposefully directed any activities toward Illinois; conducted any business in the state; or that any injury to Seo arises out of any activity by the Foreign Defendants *directed at* Illinois. Finally, Seo does not argue that exercising jurisdiction over the Foreign Defendants would "comport with traditional notions of fair play and substantial justice." It would not.

### 2. *Piercing the Corporate Veil*

In the alternative, Seo argues the Court should pierce the corporate veil to impute HQ's Illinois contacts onto the Foreign Defendants because HQ operates its subsidiaries as a "single integrated enterprise." Defendants argue that Foreign Defendants are not subject to personal jurisdiction in Illinois simply because HQ and the Illinois Defendants have contact with Illinois. Further, Defendants assert that to succeed on this theory, Seo would have to show that each Foreign Defendant itself is

subject to jurisdiction in Illinois and that nothing in Seo's pleadings indicate that the Foreign Defendants operated in Illinois or were directly involved in any substantial events in the Northern District of Illinois. The Court agrees.

Generally, "jurisdiction over a subsidiary does not provide for jurisdiction over the parent where the two are separate entities." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000) quoting *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336–37, 45 S.Ct. 250, 69 L.Ed. 634 (1925). In *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 930 (2011) the Court held that a "single enterprise theory" or request to tie one defendant's contacts to an out-of-state defendant requires "an inquiry comparable to the corporate law question of piercing the corporate veil." *See also Brilmayer & Paisley, Personal Jurisdiction and Substantive Legal Relations: Corporations, Conspiracies, and Agency,* 74 Cal. L.Rev. 1, 14, 29–30 (1986).

Under Illinois law, "piercing the corporate veil is not favored and in general, courts are reluctant to do so." *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir.2008). To successfully plead a veil piercing claim, (1) "there must be such unity of interest and ownership that the separate personalities of the corporation and the [subsidiary] no longer exist;" and (2) "circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *Wells v. Edison Int'l, Inc.*, 09 C 1728, 2009 WL 1891801 at *4 (N.D. Ill. July 1, 2009). Additionally, there must be "some element of unfairness, something

9

akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir.1994).

In the instant case, Seo asks the Court to impute the out-of-state corporate parent's (HQ's) contacts onto out-of-state subsidiaries that have no contact with Illinois. Seo argues that HQ operates its stores as a "single integrated enterprise." Dkt. 70 at ¶ 4. Seo alleges that HQ ignores all corporate formalities and mandates the subsidiaries adhere to most, if not all of HQ's rules, guidelines and policies. *Id.* Assuming that is the corporate structure, Seo presents no argument that there is any basis to infer the existence of a fraud, or an injustice by honoring the structure.

Seo relies on cases that are unpersuasive. Dkt. 81 at 9-10. None of the cases involve the scenario here: exercising personal jurisdiction over multiple *out-of-state* entities based on the conduct by an *out-of-state* parent company. *Iskhanian v. Forrester Clinic. S.C,* 2003 WL 21479072 (N.D. Ill. 2003), does not discuss personal jurisdiction or Rule 12(b)(2). *Compton as Next Friend to Compton v. Walt Disney Co.*, 05 C 3131, 2005 WL 8179273 (N.D. Ill. July 26, 2005), addresses the standard for permitting alleging piercing the corporate veil claim *after* denying a motion to dismiss for failure to state a claim and stating that "[t]here is a happy medium, however, between a bald allegation of a garden-variety corporate relationship and detailed allegations showing that piercing the corporate veil is warranted." *Id.* at *4. Lastly, Seo cites *Keller Sys., Inc. v. Trans. Int'l Pool, Inc.* 172 F. Supp. 2d 992, 1001 (N.D. Ill.

2001). That case emphasized the standard for pleading a substantive veil piercing claim related to breach of contract, not a jurisdictional one.

Seo argues that dismissing the Foreign Defendants would "promote injustice because it would ignore the reality of HQ's singular control over all aspects of the Foreign Defendants' operations." Dkt. 81 at 10. On the contrary, neither HQ nor Defendant Kwon are contesting jurisdiction, therefore allowing Seo an opportunity to pursue his claims. For these reasons, the Court finds Seo has not met his burden to defeat Defendants' Rule 12(b)(2) challenge.

The following defendants are dismissed with prejudice: H Mart American Dream LLC, H Mart Holdings, Inc., H Mart Logistics, Inc., H Mart Companies, Inc., H Mart Troy, Inc., H Mart Torrence LLC, H Mart Garden Grove, LLC, and H Mart Norwalk, LLC (the "Foreign Defendants").

### B. Joint Employers Liability

After the dismissal of Foreign Defendants, the following defendants remain: H Mart Midwest Corp. d/b/a Super H Mart ("H Mart Midwest"), BH Schaumburg, Inc. ("BK Schaumburg") (collectively "Illinois Defendants"), H Mart, Inc. ("HQ"), and Il Yeon Kwon ("Kwon"). Defendants argue that Seo's allegations of a joint employer relationship do not satisfy minimal pleading standards, and therefore the FLSA claims against Defendants must be dismissed for failure to state a claim. Notably, Seo's second amended complaint does not directly assert the Defendants are joint employers though his response to the motion to dismiss makes substantive arguments in favor of a joint employer relationship. While Seo responds that all

11

Defendants are liable as joint employers, the SAC only alleges they are liable as a single enterprise. Dkt. 70 at ¶ 2. "Whether two companies constitute a single enterprise for coverage [under the FLSA] and whether they are liable as joint employers are generally treated as separate issues." *Cf., Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003) (holding that defendant companies were single "enterprise" under FLSA and "joint employers" in determining FLSA compliance))." In light of the briefing, the Court will address whether the Illinois Defendant and HQ/Kwon are joint employers based on Seo's allegations in the SAC.

Defendants assert that Seo failed to adequately plead any facts "that would establish the requisite integration of the Defendants' respective operations necessary to demonstrate joint employment liability for all the Defendants." Dkt. 79 at 7. Seo contends that HQ and Kwon have a joint employer relationship with all of the subsidiaries. Because the analysis is the same for each of the remaining subsidiaries, this Court addresses them together.

"It is well accepted that an employee may have more than one employer at a time," and "entities that share common control over an employee may be deemed 'joint employers under the FLSA." *Ivery v. RMH Franchise Corp.,* 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017). To determine whether entities are joint employers, courts examined the economic reality of working relationships. *Id.* "[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Moldenhauer v. Tazwell-Pekin Consol. Commc'ns*

12

*Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008). While parent corporations are not automatically liable for their subsidiaries, a joint employer relationship can be shown:

> (1)Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b); *See also Karr v. Strong Detective Agency, Inc., a Div. of Kane Services*, 787 F.2d 1205 (7th Cir. 1986). The Seventh Circuit considers "(1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions." *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802, 811 (7th Cir. 2014) *quoting DiMucci Const. Co. v. N.L.R.B.*, 24 F.3d 949, 952 (7th Cir. 1994). Further, "each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case.*" Moldenhauer v. Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008).

Because Seo physically worked at and with employers BK Schaumburg and H Mart Midwest (Illinois Defendants), we analyze whether Seo has pled enough facts that make it plausible that HQ and Kwon had sufficient control over the working conditions to create a joint employer relationship with each Illinois Defendant.

Seo alleges that HQ had full control of when and where employees worked, and their rate of payment. Seo alleges HQ hired him, maintained all records for employees and controlled employee relations for all subsidiaries. Dkt. ¶¶ 8-10. He alleges he was sent to training by HQ and was ultimately fired by HQ in 2019. *Id.* Seo alleges that generally, the hiring, firing, promotions, and demotions are determined by HQ and the store branch managers. *Id.* at ¶ 13. For both Illinois Defendants, Seo alleges HQ "had complete control over plaintiff's employment." *Id.* at ¶ 8. He reports that branch managers report to HQ and carry out HQ's policies on how much employees are paid, when to pay, and why certain employees are paid a certain amount. *Id.* at ¶ 13.

As to Kwon, Seo alleges that he exercises the power to fire and hire employees, determine the rate of pay and hear employee complaints regarding terms of their employment. *Id.* at ¶ 34. Further, he alleges Kwon had the authority to change the quality and terms of employees' employment, including their schedule, compensation, and discipline. *Id.*

Given these allegations, Seo plausibly alleges the Illinois Defendants, HQ, and Kwon are joint employers. Seo alleges that both HQ and Kwon established Illinois Defendants' store procedures, determined his work schedule and where he would be working, they determined who was hired and fired, and maintained control over Illinois Defendants and who should resolve labor disputes. Defendants cite several cases regarding joint employer relationships, most of which were decided at summary judgement. *See Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 764 (7th Cir. 2013); *Solis v. Intern. Detective & Protective Service*, 819 F. Supp. 2d 740, 749

14

(N.D. Ill. 2011); *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 646 (N.D. Ill. 2007). If applicable, Defendants may raise these arguments again at an appropriate time. *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir.), *cert. denied,* 141 S. Ct. 251, 208 L. Ed. 2d 24 (2020) (the court is "required to assume that the facts alleged in the complaint are true" but gives "no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint.").

When considering the Foreign Defendants, the analysis is distinct. Seo, in essence, asks this Court to rely on the joint employer relationship between the Illinois Defendants and HQ and, based on allegations that HQ has a similar relationship with eight (8) other entities that operate in other states (where Seo worked as far back as June of 2015), impute the joint employer relationship between the Illinois Defendant *and the Foreign Defendants*. Seo provides *no* allegations that the Foreign Defendants had any control over the Illinois Defendants (or vise-versa) as required to plead joint employer liability. Seo has failed to plead joint employer between the Illinois Defendants and the Foreign Defendants. A joint employer relationship exists only between H Mart Midwest, BK Schaumburg, HQ and Kwon.

### C. FLSA Overtime Claim

Defendants assert that Seo failed to allege any facts that would establish he is a nonexempt employee and therefore covered under FLSA's overtime provisions. Dkt. 79 at 6. "A claim for overtime wages is plausible if the plaintiff's factual allegations support a reasonable inference that there was at least one workweek in which he worked more than forty hours and did not receive overtime pay." *Frisby v. Sky Chefs,*

*Inc.*, 2020 WL 4437805, at *5 (N.D. Ill. Aug. 3, 2020) (citing *Hirst v. Skywest, Inc.,* 910 F.3d 961 (7th Cir. 2018), cert. denied, 139 S. Ct. 2745 (2019), and 139 S. Ct. 2759 (2019)). Plaintiffs are not required to "plead specific dates and times that they worked undercompensated hours," but still "must provide some factual context that will nudge their claim from conceivable to plausible [and] must allege facts demonstrating there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages." *Hirst*, 910 F.3d at 966 (internal citations and quotations omitted).

Defendants' cited case does not support their assertion. *See* Dkt. 82 at 6; *Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962 (N.D. Ill. 2019) ("Generally, affirmative defenses—such as an employee's classification as exempt in the FLSA context—do not justify dismissal under Rule 12(b)(b).") Seo provides enough factual context to show he worked an excess of hours and was entitled overtime. Seo alleges that while working for Defendants:

- He was paid a fixed amount of $4,500 a month. (SAC ¶ 25)
- He generally started working at 7:00 a.m. or 8:00 a.m., depending on the location, and would conclude around 10:00 p.m. or 6:00 p.m., respectively, for six or seven days a week. (*Id.* ¶ 23-24)
- Defendants did not pay plaintiff more wage when plaintiff worked more hours or pay him any overtime wage. (*Id.* ¶ 25)
- He was a non-exempt employee who must be paid on an hourly basis. (*Id.* ¶ 26)
- Plaintiff worked a combined total of more than forty (40) hours each workweek. (*Id.* ¶ 27)
- Defendants failed to pay him all of the overtime premium due for those hours he worked in excess in forty (40) each workweek. (*Id.*)

Seo has sufficiently pled the necessary elements for an FLSA claim. Seo provides specific dates and locations in which he worked more than 40 hours a week

and was not compensated accordingly. His allegations "nudge [his] claim from conceivable to plausible." *Hirst*, 910 F.3d at 966. *See also Frisby,* 2020 WL 4437805, at *5 (FLSA claim survived motion to dismiss where plaintiff alleged that between November 2015 and March 2019, he typically worked fifty to fifty-five hours per week, and by the time he quit he had accumulated over one hundred overtime hours for which he was never compensated).

### D. The Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act Claims

The IMWL "fixes a minimum hourly wage and requires overtime pay for employees who have 'a work-week of more than 40 hours.'" *Mitchell v. JCG Indus.*, 745 F.3d 837, 844 (7th Cir. 2014). Because claims under the FLSA and IMWL are analyzed similarly, including the "employer" analysis, the Court's analysis above applies to the IMWL claim. *See id.* at 845-46; *Ivery*, 280 F. Supp. 3d at 1127 n.2; *Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794, 806 (N.D. Ill. 2013). The IWPCA fall under the same analysis. *Turner v. The Saloon,* 491 F. Supp. 2d 767, 770 (N.D. Ill. 2007), *aff'd,* 595 F. 3d 679 (7th Cir. 2010). ("the [IWPCA] is intertwined with the success of his federal claim under the FLSA, for the Illinois statute parallels the language of FLSA § 207(a)(1). Understandably the Illinois courts therefore subject the state statute to the same interpretation and application as its federal counterpart.")

Defendants assert that the IMWL and IWPCA are only applicable for work performed while in Illinois. This court agrees. *See Hirst*, 2016 WL 2986978, at *8 ("'Because the IMWL is designed to protect employees within the State of Illinois

only, it does not apply extraterritorially,' meaning it only protects employees located within Illinois and only applies to conduct occurring in Illinois.") *quoting Wooley v. Bridgeview Bank Mortgage Co.*, LLC, 2015 WL 327357, at *2, *3 (N.D. Ill. Jan. 23, 2015). Seo has adequately stated a claim under the IMWL against the remaining defendants, limited to the time-period Seo worked in Illinois. Seo's IMWL and IWPCA claims survive for the period of July 22, 2018 to April 17, 2019. Dkt. 70 ¶ 7.

### E. Retaliation Claim

Seo asserts a retaliation claim in his SAC but fails to address whether the claim is under common law or statute. In his response to the motion to dismiss he asserts the claim is made under the FLSA. Accordingly, Defendants assert that Seo fails to state a claim under the FLSA because the alleged conduct took place outside of the Illinois employment period.

The FLSA bars retaliation or discrimination against any employee because he has filed a complaint against his employer under or related to the FLSA. 29 U.S.C. §§ 215(a)(3). To state a claim under this provision Seo must plausibly allege that he engaged in a protected activity, that Defendants took an adverse employment action against him, and a casual link exists between the two. *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891 (7th Cir. 2018) *citing Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir.2012). Seo asserts that the FLSA applies even in the state of Illinois because the "adverse action" required to plead a retaliation claim includes his termination, the revocation of his green card, and transfers by HQ to and from Illinois because he "made repeated complaints about defendants' failure

18

to pay him overtime and to require him to work on his days off." Dkt. 81 at 15; Dkt. 70 ¶ 66.

Defendants assert that even if the Illinois actions are considered, Seo has failed to adequately plead that his complaints were made under the FLSA. Dkt. 82 at 9. Seo's allegations do not explain to whom, when or under what circumstances he "complained" except to described instances where he discussed his decreased hours with managers. *See* Dkt. 70 at 19. To plausibly state a claim for retaliation under the FLSA, a plaintiff must complain about conduct regulated by the FLSA, not simply complain generally about wages. *Hernandez v. City Wide Insulation of Madison, Inc.*, 508 F.Supp.2d 682, 690 (E.D. Wis. 2007). Here, Seo has not alleged that he reported any violation of the FLSA. Further, he has not alleged that he reported any violation of the FLSA to any officer of Defendant which is necessary as "[c]ourts in this Circuit have suggested that, for the "causal link" prong to be satisfied, the decisionmaker of the adverse action should have knowledge that the plaintiff engaged in a statutorily protected activity." *Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1283 (N.D. Ill. 1996). Assuming Defendants were unaware of the complaints, any action taken could not have been in retaliation nor taken because of Seo's complaints. Accordingly, Seo's retaliation is claim is dismissed without prejudice.

## IV.  Conclusion

For the foregoing reasons, Defendants Rule 12(b)(2) and Rule 12(b)(6) motion [79] is granted in part and denied in part. The following defendants are dismissed with prejudice: H Mart American Dream LLC, H Mart Holdings, Inc., H Mart

19

Logistics, Inc., H Mart Companies, Inc., H Mart Troy, Inc., H Mart Torrence LLC, H Mart Garden Grove, LLC, and H Mart Norwalk LLC (the "Foreign Defendants"). Count IV[3], retaliation under FLSA, is dismissed without prejudice.

ENTER:

Dated: November 23, 2021

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge

---

[3] Seo misnumbered the counts in his SAC, labeling the fourth count, Count VI. The Court follows the numbering laid out in the Motion to Dismiss.